UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVYONNE R. HALL,<br><br>    Plaintiff,<br><br>    v.<br><br>HAMILTON FAMILY CENTER,<br><br>    Defendant. | Case No. 13-cv-03646-WHO<br><br>**ORDER DENYING MOTION TO AMEND; GRANTING MOTION FOR SANCTIONS**<br><br>Re: Dkt. Nos. 37, 47 |

Plaintiff Evyonne Hall, already terminated from and in a dispute with her former employer, defendant Hamilton Family Center ("Hamilton"), applied to Hamilton for a new job. Defense counsel for Hamilton took exception to Hall applying directly to Hamilton when she knew that Hamilton was represented, so defense counsel wrote Hall a letter that insisted that further communications with Hamilton should go through counsel. Hall seeks to amend her complaint to name defense counsel as defendants because of that letter, and defense counsel seek to sanction Hall for doing so. Because Hall's claims have no legal merit, particularly in light of the clarifying communications that followed the initial letter, and because Hall's counsel failed to disclose those clarifying communications to me in the papers filed in connection with these motions, I will DENY the motion to amend and GRANT the motion for sanctions.

**BACKGROUND**

On August 6, 2013, Hall filed this action against Hamilton asserting federal and state causes of action for employment discrimination based on disability and retaliation, and a state cause of action for failure to prevent discrimination. Dkt. No. 1. On December 23, 2013, Hall filed a timely motion to amend her complaint. Dkt. No. 24. When Hall included new evidence and argument in her reply brief in support of the motion to amend, Hamilton objected. Dkt. No.

32. I instructed the parties that "it would be more expedient for Hall to withdraw [her] pending motion and file a new motion for leave to amend with a new proposed complaint, which includes all the causes of action and references all the evidence she seeks to introduce." Dkt. No. 35.

Hall withdrew her motion on January 29, 2014, and the following day filed a new motion to amend her complaint. Dkt. Nos. 36-37. Hall seeks to add Hamilton's counsel, Joy J. Chen and Wilson, Elser, Moskowitz, Edelman & Dicker LLP (collectively, the "Defense Counsel") as defendants, and to assert three causes of action against them: (i) violation of California's Fair Employment and Housing Act, Gov. Code § 12940(i); (ii) common law conspiracy; and (iii) violations of California's Unruh Act. Dkt. Nos. 37; 38, Ex. 1.

The basis for Hall's allegations against Defense Counsel is a July 2, 2013 letter that defense counsel Joy Chen wrote to Hall's attorney. That letter was sent prior to the inception of this lawsuit, but after Hall filed an EEOC complaint against Hamilton. The July 2 letter states in part that:

> Hall responded to an online [job] posting that unequivocally identifies [Hamilton] as the potential employer and the recipient of any e-mail or fax responses to the ad. []
>
> The parties are clearly prohibited from making any direct communication with each other when engaged in an ongoing legal dispute and where both parties are represented by legal counsel. Hall's direct communication to [Hamilton] is _not_ appropriate and must not continue.
>
> Any and all future communications to [Hamilton] must be directed to Wilson Elser by you and your client must be advised of the same. Be further advised that [Hamilton] will not respond to Hall. Should this matter not resolve, we are placing you on notice that neither you nor Hall should attempt to use this recent contact to Hall's advantage.

Declaration of Richard M. Rogers in Support of Motion for Leave to Amend Complaint ("Rogers Decl. to Mot. to Amend"), Dkt. No. 38, Ex. 1 ("July 2 letter") (emphasis in the original). Hall contends that this letter demonstrates retaliation because:she was not allowed to apply for positions with Hamilton; Hamilton would not consider her application for open positions until Hall's EEOC complaint was resolved; any employment application had to be submitted through Defense Counsel; and Hamilton imposed a unique sanction on her.

On July 8, 2013, Chen sent Hall's counsel another letter explaining that due "to the pending EEOC charges . . . Hamilton Family Center will not communicate directly with Ms. Hall. Be advised that all communication to Hamilton Family Center, including requests for re-employment, shall be directed to Wilson Elser Moskowitz Edelman & Dicker, LLP." Declaration of Richard M. Rogers in Opposition to Motion for Sanctions ("Rogers Opp'n. Decl."), Dkt. No. 51, Ex. 1, 6. On July 9th, Hall's counsel responded: "since [Hall] cannot communicate with you and is forbidden communication with your client, I hereby submit Ms. Hall's application for each and every position that is and/or becomes available." *Id.*, Dkt. No. 51, 7.

On August 26, 2013, following further correspondence between counsel about the implications of the July 2 letter, another defense counsel for Hamilton wrote to plaintiff's counsel: "We are requesting that all communications regarding [Hall's] claims be through attorneys. In the event that your client applies for any open positions that Hamilton Family Center posts, she may do so pursuant to the normal application process." Declaration of Lenore C. Kelly in Support of Motion for Sanctions ("Kelly Decl. to Mot. for Sanctions"), Dkt. No. 48, Ex. A ("August 26 letter"). In an email dated August 28, 2013, Hall's counsel noted the August 26 response and advised that Hall would "apply directly for open positions" in the future. Rogers Opp'n Decl., Dkt. No. 51, Ex. 2, 12.

Hall served Requests for Admissions on Hamilton to find out in what capacity Chen was acting in (and on whose behalf) when she sent the July 2 letter.[1] Hamilton responded to the Requests on December 11, 2013:

> **REQUEST FOR ADMISSION NO. 1:**
> Joy Chen was acting as your agent when she prepared the July 2, 2013, letter marked HALL 0080, Exhibit 1 hereto.
>
> **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**
> Objection. . . . Defendant objects this request is vague and ambiguous as to the phrase, "acting as your agent," and the term

---

[1] At oral argument, Defense Counsel stated that the author of the July 2 and July 8 letters is a junior associate and admitted, apparently for the first time, that Defense Counsel's letter misinterpreted California's Professional Conduct rule about communication with a represented party.

3

> "agent." Further objection is asserted because the term "your" is vague and ambiguous. Without waiving said objections, deny. Discovery is on-going. Responding Party reserves the right to amend the foregoing responses as discovery progresses.
>
> **REQUEST FOR ADMISSION NO. 2:**
> You authorized Joy Chen to prepare and send the July 2, 2013, letter marked HALL 0090, Exhibit 1 hereto.
>
> **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**
> Objection. . . . Defendant objects this request as asserted because term "you" is vague and ambiguous. Defendant also objects because the term "authorized" is vague and ambiguous. Further objection is made to this request as it seeks information protected by any privilege, including the attorney-client privilege, work-product doctrine, qualified work-product doctrine, privacy, trade secrets, or any other applicable privilege. Without waiving said objects, deny. Discovery is on-going. Responding Party reserves the right to amend the foregoing responses as discovery progresses.

Rogers Decl. to Mot. to Amend, Dkt. No. 38, Ex. 3, 32-33.

Hall also served interrogatories, which asked Hamilton to set forth all facts supporting the denials in the Requests for Admission. Hamilton's response on February 4, 2014, states in part:

> This interrogatory also calls for attorney client privileged communications which will not be disclosed. Without waiving said objections, responding party states: Joy Chen is not and never was an employee of Hamilton Family Center. Joy Chen is an Associate at Wilson, Elser et al the attorneys of record for Hamilton Family Center beginning March 1, 2013. The letter marked as HALL 0090, which is the subject of this interrogatory was sent in Ms. Chen's discretion and capacity a defense counsel for Hamilton Family Center. She was not instructed, directed or advised by any person at Hamilton Family Center to prepare this letter nor did any person from Hamilton Family Center participate in the drafting of any portion of the letter.

Kelly Decl. to Mot. for Sanctions, Ex. D, 4. Hall further requested from Hamilton "all of the documents pertaining to the positions for which Plaintiff applied in 2013" and "[Hamilton] produced only Ms. Hall's application." Opp'n to Mot. for Sanctions 4; Rogers Opp'n Decl., Ex. 3, 4.

Hall contends that the July 2 letter was retaliatory and supports her aiding and abetting claim under FEHA, her civil conspiracy to violate public policy claim, and her claim for violation of the Unruh Act. Hall also contends that as Defense Counsel have denied acting as the agent of Hamilton in sending the letter and (assuming the truth of the interrogatory answer) that Hamilton

played no role in sending the letter, Hall can only assert her retaliation-based claims against Defense Counsel. Reply to Mot. to Amend 1, 7.

Hamilton opposes Hall's motion for leave to amend, arguing futility per Rule 12(b)(6) and bad faith. Dkt. No. 42. Hamilton argues that the July 2 letter was not retaliatory and, at most, required Hall to submit applications for reemployment through Defense Counsel. Hamilton further argues Defense Counsel cannot be held liable under the claims Hall seeks to add because Defense Counsel were not acting in concert with Hamilton, and therefore amendment should be denied as futile. Hamilton also filed a motion for sanctions against Hall or her counsel for seeking leave to amend to add frivolous and futile claims. Dkt. No. 47, 7-14.

## DISCUSSION

### I. MOTION FOR LEAVE TO AMEND

#### A. Legal Standard

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within (i) 21 days after serving the pleading or (ii) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion. Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a). In *Lockheed Martin Corp. v. Network Solutions, Inc.*, the Ninth Circuit stated that leave to amend should be freely given absent "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." 194 F.3d 980, 986 (9th Cir. 1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (original emphasis).

#### B. Violation of California Government Code Section 12940(i)

1    Hall alleges that Defense Counsel violated the aiding and abetting provision of the
2    California Fair Employment and Housing Act ("FEHA"), section 12940(i). Section 12940(i)
3    provides that it is an unlawful employment practice "[f]or any person to aid, abet, incite, compel,
4    or coerce the doing of any of the acts forbidden" by the FEHA, "or to attempt to do so." CAL.
5    GOV'T CODE § 12940(i). FEHA does not define aiding or abetting, but California courts have
6    adopted the common law definition. *See, e.g.*, *Vernon v. State of Cal.*, 116 Cal. App. 4th 114, 131
7    (2004); *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996). Under common law, a person
8    "aids and abets the commission of an intentional tort if the person":

> (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Fiol*, 50 Cal. App. 4th at 1325-26; *Hall v. Apt. Inv. & Mgmt. Co.*, No. 08-cv-3447-CW, 2011 U.S. Dist. LEXIS 156888, at *25-26 (N.D. Cal. Feb. 18, 2011).

Hall alleges that she suffered loss of earnings and severe emotional distress from the Defense Counsel's "conspir[acy] with Defendant Hamilton to retaliate against Plaintiff by refusing to allow her to apply for a job at Hamilton until she dismissed her EEOC complaint." Rogers Decl. to Mot. to Amend, Ex. 1, ¶¶ 26, 30-31. The main basis for the allegation that Defense Counsel aided and abetted Hamilton is the July 2 letter from Chen, which Hall contends Defense Counsel sent to Hall's attorney "pursuant to the conspiracy but not as agents of Defendant Hamilton o[r] with Defendant Hamilton's express authorization." *Id.* at ¶ 27.

Hamilton asserts that it is futile to allow amendment, arguing that Hall's aiding and abetting claim fails because the July 2 letter does not amount to "substantially assisting" or "substantially encouraging" Hamilton to engage in the alleged misconduct. Opp'n to Mot. to Amend 6. Hamilton argues that the July 2 letter is "[a] mere direction from one attorney to another attorney that communications between parties-in-dispute be through their respective counsel. . . ." *Id.* When fairly read, the letter does not retaliate because Hall is not prohibited from applying to any open positions at Hamilton but simply required to submit applications through Defense Counsel.

6

Hall responds that the July 2 letter "forbids Plaintiff from direct communication with Hamilton," and that fact, as well as the denial of Hall's right to apply for reemployment, is unlawful retaliation under FEHA. Reply Mot. to Amend 1-4. Hall further argues that she seeks to join Defense Counsel because "Defendant Hamilton denied that Joy Chen was acting as its agent or was authorized to send the [July 2] letter," which presents the issue of "whether attorneys can shield their client from liability for unlawful retaliation." *Id.* at1-2. Finally, Hall contends that even if the July 2 letter can be read as only requiring Hall's employment applications to be sent through Defense Counsel that in and of itself is retaliation. Reply Mot. for Sanctions 4.

Defense Counsel's July 2 letter arguably misstated the law.[2] However, that does not mean that Defense Counsel's acts substantially assisted or encouraged *Hamilton's* alleged misconduct, which would be necessary to support a FEHA aiding and abetting claim. Hall admits (and Hamilton's interrogatory responses confirm) that Chen sent the July 2 letter without authorization and input from Hamilton. Reply in Support of Mot. to Amend at 1. As such, Defense Counsel could not have "aided and abetted" any action of employment discrimination against Hamilton. Hall admits Defense Counsel were acting on their own, which is why Hall believes she needs to sue Defense Counsel. Hall has, in effect, pleaded herself out of this cause of action for "aiding and abetting."

Moreover, the July 2 letter does not state that Hamilton will not consider Hall's application for reemployment (the alleged retaliation). Read fairly, the letter simply notifies Hall's counsel that Hall should direct her applications for reemployment through Defense Counsel.[3]

Finally, Hall provides no support for her assertion that simply requiring a party in litigation, or in this case pre-litigation with an EEOC dispute, to submit applications for

---

[2] Parties to an ongoing legal dispute who are represented by counsel are *not* "clearly prohibited from making direct communication from each other." *See* CAL. RULES OF PROF'L CONDUCT R. 2-100 (discussing in the commentary of the1992 amendment that "[r]ule 2-100 is not intended to prevent the parties themselves from communicating with respect to the subject matter of the representation, and nothing in the rule prevents a member from advising the client that such communication can be made.")

[3] This reading of the letter is consistent with the parties' correspondence on July 8 and 9 (submitted by Hall as exhibits in support of her Opposition to the Motion for Sanctions), and plaintiff's counsel's own conduct – which was to submit an application for reemployment for Hall through Defense Counsel on July 9. Dkt. No. 51, 7.

reemployment through Defense Counsel *itself* constitutes retaliation under FEHA.

Hall relies on *Alch v. Superior Court*, 122 Cal. App. 4th 339, 389 (2004), to argue that she has adequately alleged her aiding and abetting claim against Defense Counsel. Opp'n to Mot. for Sanctions 5. Her aiding and abetting allegations fall far short of the actionable conduct described in *Alch*, where television writers included a FEHA aiding and abetting claim in their age discrimination class actions against the talent agencies that worked with the employers. *Alch*, 122 Cal. App. 4th at 353-54, 389. The plaintiffs in *Alch* alleged at least five ways that the talent agencies substantially assisted and encouraged the employers' violations, including "the talent agenc[ies'] refusal to represent older writers, failure to refer the older writers it represents to the employers as zealously as younger writers, communicating ageist stereotypes and motivations and thus discouraging older writers from seeking employment with the employers, and so on." *Id.* at 390. The Court held that the plaintiffs' complaints sufficiently pled the talent agencies' liability for aiding and abetting, finding that "the complaints clearly allege the agencies knew the employers were engaged in systemic discrimination on the basis of age, and gave 'substantial assistance or encouragement' to the employers by virtue of their own referral practices, screening out older writers in favor of younger ones." *Id.*

In contrast, the crux of Hall's aiding and abetting claim rests on the July 2 letter and Defense Counsel's denial that Hamilton authorized the letter. Hall's allegations against Defense Counsel do not show the "substantial assistance or encouragement" demonstrated in *Alch* and required for a FEHA aiding and abetting claim. Unlike in *Alch*, Hall has not alleged plausible facts that Defense Counsel knew that Hamilton wanted to prohibit Hall from applying for job openings. Indeed, Hall admits that she seeks to file this claim against Defense Counsel *because* Defense Counsel were working on their own, without the input or authorization of Hamilton.

It would be futile to allow amendment. Hall's motion is DENIED as to the FEHA claim.[4]

---

[4] To be clear, the Court is not foreclosing any retaliation claim that Hall asserts against Hamilton based on the alleged refusal of Hamilton to consider Hall for job openings, or alleged barriers that Hamilton enacted to Hall's attempts to apply for job openings, in retaliation for Hall's EEOC complaint.

### C. Conspiracy

Hall also seeks to add a common law conspiracy cause of action against Defense Counsel. To establish conspiracy the complaint must allege: (i) the formation and operation of the conspiracy; (ii) the wrongful act or acts done pursuant thereto; and (iii) the damage resulting. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 511 (1994). "By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Id.*

Hamilton argues that "[a]ttorneys, as non-employers, cannot be sued for conspiring with Hamilton regarding [Hall's] application for reemployment because attorneys owed no tortious duty to [Hall]." Opp'n to Mot. to Amend 7. It asserts that Hall has not and cannot allege that any adverse employment action occurred regarding her application for re-hiring. *Id.* Finally, it contends that "there was no formation of a conspiracy" as evidenced by Hamilton's discovery responses explaining the basis for the Denial of the Requests for Admissions relied on by Hall, that "Chen was not instructed, directed or advised by any person at Hamilton Family Center to prepare this letter nor did any person from [Hamilton] participate in the drafting of any portion of the letter." Mot. for Sanctions 9; Kelly Decl. to Mot. for Sanctions, Ex. D, 4.

Hall responds that she has adequately alleged an adverse employment action: Hamilton's refusal to consider Hall's application – the application that spurred the July 2 letter – for employment while litigation was pending. Reply to Mot. to Amend 6; Proposed Amended Compl. ¶ 26. She asserts that the duty owed to her, that Defense Counsel violated, was the statutory duty imposed by Section 12940(i). Opp'n to Mot. for Sanctions 6. And finally, in her reply brief, Hall argues that Defense Counsel are Hamilton's independent contractors and that independent contractors are liable for retaliation under California law. Reply to Mot. to Amend 4.

With respect to adverse employment action, the July 2 letter was not a refusal to consider Hall's application for reemployment. It was a direction that applications go through Defense Counsel. There are no other allegations in Hall's proposed complaint that could establish an adverse employment action from the July 2 letter. Hall fails to identify any others in her briefing

9

1 on the Motion to Amend or Motion for Sanctions.

2 The only duty identified by Hall is the statutory duty imposed under section 12940(i), but the case on which Hall relies is actually contrary to her position. In *Unruh v. Truck Insurance Exchange*, the California Supreme Court found that the conspiracy claim (the third count) alleged against defendant Truck only incorporated the allegations of the first count (for negligence) that failed to state a claim. 7 Cal. 3d 616, 632 (1972). As a result, the court in *Unruh* held that "[t]he third count [for conspiracy], like the first count, must succumb to Truck's demurrer." *Id*. Likewise, Hall's conspiracy claim incorporates only the allegations of her defective FEHA aiding and abetting claim, which I am dismissing with prejudice for the reasons stated above.[5]

Finally, Hall fails to allege facts to support the existence of a conspiracy between Hamilton and Defense Counsel to retaliate in the July 2 letter. As Hall herself admits, Defense Counsel were not acting as the agent of Hamilton and wrote the letter without the authorization or input of Hamilton.[6] Accordingly, Hall's conspiracy claim fails. It would be futile to allow amendment.

**D. Unruh Act**

Hall asserts that Defense Counsel violated California's Unruh Civil Rights Act, Cal. Civil Code sections 51(a) and (f) by "prohibiting Ms. Hall from applying for employment and inciting [Hamilton] to refuse to consider her applications until litigation was dropped." Reply to Mot. to Amend 6. There is no legal merit to this claim.

The Unruh Act's central substantive statutory provision states:

---

[5] Hall also relies on cases holding that denial of reemployment can constitute retaliation. *See* Reply to Mot. to Amend 4; Opp'n to Mot. for Sanctions 3. However, those cases only establish that *Hamilton's* refusal to consider Hall's application, if it occurred, could constitute an adverse employment action. *See, e.g.*, *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997) (discussing that "retaliatory conduct takes the form of discharge, demotion, failure to promote, or similar actions that clearly inflict tangible, employment-related harm upon the employee").

[6] With respect to Hall's contention that Defense Counsel were independent contractors of Hamilton, Hall has alleged no facts that could plausibly support her claim. She cites no case law recognizing that attorneys can be considered independent contractors when acting on behalf of a client. In the motion hearing, Hall raised *Lawson v. FMR LLC*, 134 S. Ct. 1158 (2014), to support her position. But Hall's reliance on *Lawson* is misplaced. In *Lawson*, the Court grappled with the scope of the whistleblower anti-retaliation protection of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, holding that such protection extends to the employees of private contractors and subcontractors who perform work for a public company. *Id.* Hall's allegations against Defense Counsel have nothing to do with the Sarbanes-Oxley Act or whistleblower protections.

> [a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

CAL. CIV. CODE § 51(b). Section 51(f) provides that "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 ["ADA"] shall also constitute a violation of this section."[7] *Id.* § 51(f).

The only harms Hall alleges are employment discrimination harms; namely that Defense Counsel discriminated against her by preventing her from applying for reemployment with Hamilton and required her to submit applications for reemployment through Defense Counsel. In the context of an action by an employee against an employer, the "California Supreme Court has expressly held that employment discrimination claims are excluded from §51's protection." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1124 (9th Cir. 2008) (en banc) (citing *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 500 (1970)); *Leramo v. Premier Anesthesia Med. Grp.*, No, 09-cv-2083, 2011 U.S. Dist. LEXIS 73645, at *49 (E.D. Cal. July 8, 2011). Hall's Unruh Act claim against Defense Counsel fails as a matter of law.

As to Section 51(f), Hall does not allege any facts that could support asserting an ADA claim against Defense Counsel. "[V]iolations of the ADA [are] per se violations of the Unruh Civil Rights Act." *Jankey v. Lee*, 55 Cal. 4th 1038, 1044 (2012). "[T]he ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). Although Hall does not identify which title(s) of the ADA form the basis of her Unruh Act claim, she alleges in her proposed amended complaint that Defense Counsel retaliated against her for filing an EEOC complaint and incorporates by reference only the allegations of her FEHA aiding and abetting claim. Rogers Decl. to Mot. to Amend, Dkt. No. 38, Ex 1, ¶¶ 36-38. Title I of the ADA prohibits discrimination "against a

---

[7] Section 51(a) provides that: "This section shall be known, and may be cited, as the Unruh Civil Rights Act." CAL. CIV. CODE § 51(a).

11

qualified individual on the basis of disability in regard to . . . [the] privileges of *employment*." 42 U.S.C. § 12112(a) (emphasis added).  Moreover, "[t]o establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she was engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 849 (9th Cir. 2004).

To the extent that Hall's Unruh Act claim can be based on Title I of the ADA, her claim fails because she cannot allege an employment relationship (as defined by the ADA) with Defense Counsel.  *See Castle v. Eurofresh, Inc.*, 731 F.3d 901, 906 (9th Cir. 2013) (noting that for a Title I ADA discrimination claim, a court must first resolve whether plaintiff had an employment relationship with defendant that fit the meaning of the ADA).  Neither is the relationship between Defense Counsel and Hall one between a business establishment and its clients, patrons, or customers.  *See Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72**,** n.12 (1985) (noting that the Unruh Act is "confined to discriminations against recipients of the 'business establishment's . . . goods, services or facilities.'")(internal citations omitted).  As discussed above, I reject Hall's argument that the July 2 letter was itself a refusal by Hamilton (or Defense Counsel) to consider Hall's applications for reemployment.  With respect to the "harm" of having to submit applications for reemployment through Defense Counsel, Hall cites no authority that that can be considered an adverse employment action under the ADA.

Hall has failed to show how the July 2 letter had a discriminatory effect that is covered by the Unruh Act.  Leave to amend would be futile.

**II. MOTION FOR SANCTIONS**

Hamilton moves for sanctions against Hall or her counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure.  Def.'s Mot. for Sanctions ("Mot. for Sanctions"), Dkt. No. 47, 7-14.  Hamilton seeks sanctions on the basis of Hall's attempts to amend her complaint, arguing that "[p]laintiff's allegations [against Defense Counsel] are objectively frivolous and not supported in law or fact" and "brought for improper purposes."  *Id*. at 7, 11.  Hamilton seeks $26,325 in monetary sanctions for the costs, expenses, and attorney's fees incurred in response to both of Hall's motions to amend, including anticipated costs to appear at the hearing.  *Id.* at 15;

Kelly Decl. to Mot. for Sanctions ¶¶ 9-11.

**A. Legal Standard**

Federal Rule of Civil Procedure 11 states in part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .
>
> (c) Sanctions. (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule . . . .

FED. R. CIV. P. 11(b)-(c).

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted). The word "frivolous" is shorthand that the court uses "to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co* (*In re Keegan Mgmt. Co., Sec. Litig.*), 78 F.3d 431, 434 (9th Cir. 1996); *Holgate v. Baldwin*, 425 F.3d 671, 675-76, (9th Cir. 2005). "A motion for sanctions may not be filed, however, unless there is strict compliance with Rule 11's safe harbor provision." *Islamic Shura Council of S. Cal. v. FBI*, 2014 U.S. App. LEXIS 5175, at *3-4 (9th Cir. Mar. 18, 2014). The safe harbor provision provides that any motion for sanctions must be served on the

offending party at least 21 days before the motion is filed with the court. FED. R. CIV. P. 11(c)(2).

### B. Safe Harbor Provision

Hamilton has complied with Rule 11's safe harbor provision. On January 28, 2014, Hamilton served on Hall's counsel a copy of Hamilton's Motion for Rule 11 Sanctions with a letter demanding that Hall "withdraw her Motion for Leave to File an Amended Complaint and related Administrative Motion for Briefing Schedule" by February 18, 2014. Kelly Decl. ¶5, Ex C. In that letter, Hamilton advised that proceeding with the motion constitutes sanctionable conduct because every count raised against Defense Counsel fails as a matter of law, and Hall's allegations are based on misrepresentations of fact and a willful disregard for existing factual evidence. *Id*. at Ex. C. On February 26, 2014, more than 21 days after providing Hall with the motion for sanctions, Hamilton filed the motion with the Court. Dkt. No. 47.

### C. Factually and Legally Baseless

Hamilton asserts that sanctions are appropriate because Hall's allegations are unsupported in law or fact, and that no reasonable attorney would conclude that the July 2 letter "purported to prohibit, ignore, refuse, or otherwise limit Plaintiff's application for re-employment with Hamilton" such that it could support the causes of action that Hall asserts against the Defense Counsel. Mot. for Sanctions 7-8. Hamilton further argues that "[Hall] and her attorney were obligated to take into consideration the circumstances as a whole, including further correspondence between counsel . . . ." Reply to Mot. for Sanctions 7.

"[A] claim is factually baseless if it lacks factual foundation." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. 04-cv-00689, 2007 U.S. Dist. LEXIS 34467, at *9 (C.D. Cal. Apr. 16, 2007) (citing *Estate of Blue v. Cnty. of Lair; Angeles*, 120 F.3d 982, 985 (9th Cir. 1997)). "A cause of action is 'well-grounded in fact' if an independent examination reveals 'some credible evidence' in support of a party's statements." *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 710 (N.D. Cal. 1995). Having "some plausible basis, [even] a weak one," is sufficient to avoid sanctions under Rule 11. *United Nat. Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001). "As long as the critical information is not absent altogether, lawyers may not be sanctioned for such misjudgments." *Id.*

1    Hall contends that her allegations against Defense Counsel do not lack legal or factual

2 support because the July 2 letter formed the basis of her retaliation claim and that "the Motion for

3 Leave to Amend was filed because of the denials of the Requests for Admissions."  Opp'n to Mot.

4 for Sanctions 3-4.  She asserts that "defense counsel has never made any attempt to discuss the

5 issues raised by the July 2, 2013, letter in conjunction with the denials" and that "Defendant is

6 resisting providing discovery on the issues."  *Id.* at 4.  Plaintiff requested from Hamilton "all of

7 the documents pertaining to the positions for which Plaintiff applied in 2013" and "[Hamilton]

8 produced only Ms. Hall's application."  *Id.*; Rogers Opp'n Decl. to Mot. for Sanctions, Ex. 3, 4.

9 Further, Hall argues that:

> [A]s shown in the correspondence subsequent to July 2, 2013, defense counsel did not promptly remove the discriminatory condition that Ms. Hall could not apply to Hamilton directly for employment. Eight weeks after, on August 26, 2013, they <u>may have</u> withdrawn the proviso that Ms. Hall would not be considered for employment until she dropped the litigation.  The letter does not say so.  Ms. Hall has not been rehired by Defendant, so the prohibition ostensibly remains in effect.

Opp'n to Mot. for Sanctions 3-4 (emphasis in the original).  Hall insists that "[she] was subjected to a discriminatory condition, to wit: only [she] was prohibited from applying directly to Hamilton."  *Id.* at 4.

Hall's allegations against Defense Counsel lack any plausible factual basis.  Her motion to amend relies solely on the July 2 letter and Defense Counsel's December 11, 2013, denial of Hall's requests for admissions.  Opp'n to Sanctions 3-4.  These two facts, standing alone, make Hall's claims less implausible, though not meritorious.  But these facts do not remotely constitute the entire picture.

Altogether absent from Hall's motion to amend is the critical information revealed by the correspondence between Hall's counsel and Defense Counsel on July 8 and 9, 2013, where the parties acknowledged that Hall could apply for open positions through Defense Counsel and plaintiff's counsel *did so* on behalf of his client.

Hall's motion for leave to amend also ignores the August 26 and 28, 2013 correspondence between counsel.  Defense Counsel's August 26 letter specifically states that:  "We are requesting

15

that all communications regarding [Hall's] claims be through attorneys.  In the event that your client applies for any open positions that Hamilton Family Center posts, she may do so pursuant to the normal application process." Kelly Decl. to Mot. for Sanctions, Dkt. No. 48, Ex. A.  In response, Hall's counsel notes in an email on August 28, 2013, that: "You then, apparently, remove the prohibition.  Thank you.  I will advise Ms. Hall that she can apply directly for open positions." Rogers Opp'n Decl. to Mot. for Sanctions, Dkt. No. 51, Ex. 2, 12. ("August 28 email").

In addition to being wrong, Hall misled the Court.  Her allegation that she was denied the opportunity to apply for open positions because of Defense Counsel is directly contradicted by the July 8 and 9, 2013 correspondence between the parties, which Hall fails to mention in either of her motions for leave to amend.  As to plaintiff's contention that it was retaliatory to require Hall to apply for open positions through only Defense Counsel, Hall omitted in both of her motions for leave to amend the August 26 letter that removed any prohibition on Hall applying for positions directly to Hamilton.   In his August 28 email, plaintiff's counsel acknowledges that he understood that Hall had not been prohibited from applying for a job at Hamilton, acknowledging that now she could once again apply directly to Hamilton.[8]  Yet he did not mention that fact in his motion.  Not to put too fine a point on this, Hamilton produced Hall's application in response to plaintiff's request for "all of the documents pertaining to the positions for which Plaintiff applied in 2013," Opp'n to Mot. for Sanctions 4; Rogers Opp'n Decl. to Mot. for Sanctions, Ex. 3, 4, which contradicts Hall's thesis that Hamilton did not receive her application because of Defense Counsel's interference.

Hall's allegations against Defense Counsel—made in both of her motions to amend—omitted critical information, and such omissions are sufficient grounds for Rule 11 sanctions.  *See United Nat. Ins. Co.*, 242 F.3d at 1117.

---

[8] On February 4, 2014, just days after filing Hall's motion to amend, Defense Counsel responded to Hall's interrogatories that the July 2 letter "was sent in Ms. Chen's direction and capacity a[s] defense counsel for [Hamilton].  She was not instructed, directed or advised by any person at [Hamilton] to prepare this letter nor did any person from [Hamilton] participate in the drafting of any portion of the letter." Kelly Decl. to Mot. for Sanctions, Ex. D, 4.

16

Moreover, as discussed above, Hall's FEHA aiding and abetting, conspiracy, and Unruh Act claims that she seeks to assert against Defense Counsel are legally baseless. Counsel can violate Rule 11 by making claims that are unwarranted by existing law or any reasonable argument for the extension of existing law. *See* FED. R. CIV. P. 11 (b)(2). The Ninth Circuit has held that when a plaintiff fails to allege necessary elements of her claim, a court may find that the complaint is legally baseless and thus impose Rule 11 sanctions. *Holgate*, 425 F.3d at 676. "The key question in assessing frivolousness is whether a complaint states an arguable claim – not whether the pleader is correct in his perception of the law." *Woodrum v. Woodward Cnty., Okla.*, 866 F.2d 1121, 1127 (9th Cir. 1989). I will not repeat the analysis in the first section of the Discussion that establishes the total lack of merit of Hall's proposed amendments.

### D. Unreasonable Inquiry

Hamilton argues that Hall failed to conduct a competent and reasonable inquiry because Hall failed to heed the clarification that Defense Counsel made in their July 8 and August 26 correspondence, as well as the facts included in their interrogatory responses. Mot. for Sanctions 9. Hamilton further argues that Hall proceeded with the baseless claims against Defense Counsel only to increase litigation costs. *Id.* at 14.

An attorney has a duty prior to filing a complaint "to conduct a reasonable factual investigation." *Christian* , 286 F.3d at 1127. "The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Id.* Such an investigation is "an inquiry reasonable under all the circumstances of a case." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990).

Plaintiff's counsel contends that he conducted a competent and reasonable inquiry by (i) "request[ing] an explanation of [Hamilton's] position on agency and authority"; (ii) [p]ropound[ing] discovery on the issues"; (iii) "set[ting] forth Plaintiff's [position] in memoranda in support of the motions for leave to amend"; and (iv) "researching the issues and cited applicable authority." Opp'n to Mot. for Sanctions 10. Although plaintiff's counsel gathered information about Hamilton's position, he failed to objectively consider *all* the facts that he learned and failed

17

to present them to the Court on either of Hall's motions to amend. Instead, he fixated solely on the July 2 letter and Defense Counsel's responses to Hall's request for admissions, omitting other critical information from the motions. Moreover, in the motions to amend and opposition to the motion for sanctions, plaintiff's counsel failed to cite cases which could have led Hamilton's counsel to believe that there was a legal basis per the facts in Hall's case to assert aiding and abetting, conspiracy or Unruh Act claims against Defense Counsel. This is not surprising – I have not found any either. Accordingly, I also find that plaintiff's counsel failed to make a reasonable inquiry into the facts and law.

### E. Decision to Award Sanctions

I do not like to award sanctions. If this were simply a case where plaintiff's counsel tried to allege an unorthodox but legally meritless position, I would not do so. But this is not simply a case where counsel misunderstands, or tried creatively to extend, the law. Hall's counsel completely ignored the communications with Defense Counsel, including his own statements, that contradicted his claims. Worse, he misled me by failing to even mention them in his papers. And the result he sought—naming Hamilton's litigation counsel as parties—is a tactic to disqualify Defense Counsel and pit their client against them in a way that seriously undermines the operation of our adversarial system of justice. All of these factors impel me to award sanctions in this case against Hall's counsel.

### F. Amount of Sanctions

Hamilton seeks monetary sanctions of $26,325. Kelly Decl. to Mot. for Sanctions ¶¶ 9-11. Hamilton incurred $16,600 in attorney's time and costs for drafting and filing the first opposition to plaintiff's motion to amend her complaint, other litigation issues raised by the initial motion to amend, and the motion for sanctions.[9] *Id.* at ¶ 9. Hamilton further incurred $8,700 in attorney's time and costs for drafting and filing the opposition to plaintiff's second motion for leave to amend her complaint and for updating its motion for sanctions. *Id.* at ¶10. Hamilton anticipated an additional $1,025 in fees for oral argument. *Id.*

---

[9] Defense Counsel did not provide billing statements or their billing rates and hours expended.

18

Although Hamilton's motion seeks sanctions jointly and severally against plaintiff and her counsel, I find sanctions are warranted only against plaintiff's counsel since only his conduct is at issue. Sanctions for a Rule 11 violation may be awarded solely against an attorney, and such sanctions are appropriate where the improper conducts is counsel's. *See Huettig & Schromm, Inc. v. Landscape Contractors Council*, 790 F.2d 1421, 1426-27 (9th Cir. 1986).

Moreover, "[t]he court has significant discretion in determining what sanctions, if any, should be imposed . . . [and] sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." FED. R. CIV. P. 11 advisory committee note (1993); *Miller v. Cardinale*, 361 F.3d 539, 553 (9th Cir. 2004); *see also Holgate*, 425 F.3d at 681 (noting that a court can impose sanctions for an amount sufficient to deter repetition of the challenged conduct).

While the request for sanctions in the full amount of Hamilton's request is not unwarranted, I am concerned about the impact of such an award against plaintiff's counsel. He is a solo practitioner and does not have a big firm's deeper pockets to cushion an award against him. Sanctions of $2,500 should be a sufficient deterrent both to Hall's counsel and to others tempted to litigate in a similar way.

## CONCLUSION

For the reasons above, plaintiff's motion for leave to amend is DENIED and defendant's motion for sanctions is GRANTED. Plaintiff's counsel is ORDERED to pay Hamilton **$2,500** within thirty (30) days of the date of this Order.

**IT IS SO ORDERED**.

Dated: April 11, 2014

WILLIAM H. ORRICK
United States District Judge